Elvira Porrata Doria de Romanacce, Plaintiff and Appellee, *v.* Manuel V. Domenech, Treasurer of Puerto Rico, Defendant and Appellant.

No. 7196. Argued January 12, 1937.—Decided April 2, 1937.

B. *Fernández García, Attorney General,* and *T. Torres Pérez, Assistant Attorney General,* for appellant. *J. J. Ortiz Alibrán* for appellee.

Mr. Chief Justice Del Toro delivered the opinion of the court.

We are dealing herein with an action to recover taxes paid under protest.

Since before March 1913, the plaintiff was the owner of a rural property of 130 acres (*cuerdas*) located at Salinas, which she leased to Luce and Company, *S. en C.,* uninterruptedly until November 1927, when she sold it to the lessee for $90,000.

In January 1932, the Treasurer of Puerto Rico notified her that she had to pay $12,113.32 as income tax on the pro-

fits derived from said sale. Feeling aggrieved by that ruling, she appealed to the Board of Review and Equalization, which reduced the tax to $6,924.62. The taxpayer paid under protest and brought, in the District Court of San Juan, an action to recover the tax so paid.

The entire controversy in the instant case hinges upon the fair value of the property in 1913, and whether or not certain improvements made by the lessee in 1920, which inured to the benefit of the owner, should be deducted from the selling price.

The plaintiff alleged that the fair value of her property in 1913 amounted to $75,000 and that there should be deducted from the selling price the sum of $9,390, which is the value of a permanent irrigation pump installed by the lessee in 1920.

The defendant rested his position on the ground that the fair value of the property in 1913 amounted to $40,000, and that the value of the improvements made on the property involved by the lessee could not be deducted.

The case went to trial, and upon the evidence introduced the court assessed at $65,000 the value of the property in 1913, held that the value of the improvements should be deducted, and ordered a new liquidation of the tax on that basis, and the return to the plaintiff of whatever sum turned out to have been erroneously collected, with interest thereon at the legal rate from the date of such collection.

The Treasurer appealed from that judgment to this court. He maintains, in the first place, that the complaint is insufficient because it contains no allegations to the effect that the Board of Review and Equalization acted illegally and arbitrarily in making a valuation of the property.

We have examined the complaint, and in our opinion, it is sufficient. It was filed in accordance with the provisions of section 76 of Act No. 74 of 1925 (Session Laws, p. 400), the first two paragraphs of which (p. 538) read thus:

"The decisions of the Board of Review and Equalization shall be final without prejudice to a reconsideration pursuant to law. The taxpayer shall pay under protest such tax as shall have been levied on him within the time specified and within 30 days subsequent to such payment under protest he may bring proper suit in a proper court, against the Treasurer of Porto Rico.

"Said suits shall have preference on the court calendars. All defenses to be alleged by the defendant against the complaint shall be made at the same time in one sole answer, and the judge shall decide them at one hearing in strict order of precedence, and the hearing shall be set promptly for final decision."

Was the district court justified in assessing the value of the property in 1913 at $65,000 when the board had fixed it at $40,000?

The question as to the fair value of the property in 1913 was raised by the plaintiff thus: The fixing of the fair value of the property by the board at $40,000 was arbitrary. The property was worth $75,000.

In order to prove her allegation she introduced the testimony of a witness who stated, in substance, that the value per acre of the property was $500. The defendant did not attack that testimony. He did not introduce any evidence as to the value of the property.

He relied, it seems, on the decision of the board. The district court stated that the testimony of the witness for the plaintiff merited full credit, and fixed the value of the property at $65,000, that is, $25,000 more than the estimate of the board, and $10,000 less than that of the plaintiff.

The defendant maintains that, since we are dealing with a finding of fact made by the board by virtue of an examination of the evidence and in the exercise of its powers, said finding could not be altered by the district court.

We think that the lawmaker, by granting the right of appeal provided by section 76 of Act No. 74 of 1925, vested the courts with the necessary jurisdiction to investigate and decide all the questions duly raised within such appeal. And

one of those questions undoubtedly is the one relating to the value of the property, where said value, as in the case at bar, forms the basis on which the tax is levied.

The property in question was assessed for taxation purposes in 1913 at $19,000, and that was the value that the Treasurer took as a basis to levy the tax. When the taxpayer appealed to the board for an adjustment in the valuation, this organization, in accordance with the statute which provides that the basis for the estimate should be the cost or fair market value of the property on March 1, 1913 (see sections 5 and 6 of Act No. 74 of 1925), fixed the value of the property at $40,000 that is, at the rate of $300 per acre (*cuerda*).

What procedure was followed by the board? We do not know. On what evidence did it base its finding? The defendant insistently maintains that the evidence introduced in the court is the same as that presented to the board, but we have found nothing in the record to prove this. We think that in a case of this kind the defendant should introduce the necessary evidence to enable the district court to render such judgment as might be just. Otherwise, if the defendant fails to attack the evidence introduced by the plaintiff, he can not complain of the fact that the court said, as it did in the opinion in this case, that:

" . . . The market value of a certain property on a given date, is a question of fact that should be established by the taxpayer by means of reasonable and adequate evidence. It is so acknowledged by the regulations of the Treasurer when in fixing the basis for determining the profit or loss in a sale, they provide, by article 22 that:

" 'What the fair market value of the property was on March 1, 1913, is a question of fact to be established by competent evidence.'

"Concerning the definition of the term 'fair market value,' both parties are in accord with the definition of the term which is set forth in 'Federal Income Taxation' by Joseph J. Klein, 1929 ed., p. 805. Said definition reads thus:

214

" 'It is the price that would be realized for property if sold by a "willing seller" to a "willing buyer," both having knowledge of the market, and under normal conditions and without compulsion or necessity on the part of either party.'

"The allegation that the 'Melanía' property had a fair market value on March 1, 1913, is not capricious or arbitrary but has been established by competent, uncontroverted evidence. It is by reason of all that evidence fairly and reasonably weighed, that we, still being conservative in our assessment, hold that the fair market value of the property 'Melanía' on March 1, 1913, was $65,000. We do not know what was the basis on which the Board of Review and Equalization rested to fix the value of the property at $40,000. No evidence was introduced on this point. Hence, we can not fail to consider as uncontroverted the evidence introduced by the plaintiff ... "

We have examined the testimony that served as a basis to the court to render its judgment and, in our opinion, it supports the judgment.

■ The other question involved—relating to the improvements—offers some doubts, as really said improvements were not made by the owner at her own expense, but by the lessee. Those doubts disappear after a careful study of the question. The grounds set forth in the opinion of the district court in support of its findings appear to us to be convincing and we approve them. They are as follows:

"The second question to be considered in the 'case at bar is whether the value of the improvements made by the lessee should be added to the market value of the property in 1913. Subdivision *b* of section 5 of the Income Tax Act, *supra,* says:

" 'In computing the amount of gain or loss under subdivision (*a*) proper adjustment shall be made for (1) any expenditure properly chargeable to capital account, and (2) any item of loss, exhaustion, wear and tear, obsolescence, amortization, or depletion, properly chargeable with respect to such property.'

"Referring to this subdivision, the regulations of the Treasurer provide:

" 'In computing the amount of gain or loss, however, the cost or other basis of the property should be increased to the extent of the value of the improvements made to said property since the original date.'

"We consider these provisions to be definite. There is no doubt that the value of the improvements should be added to the basic value of the property on March 1, 1913. This is, perhaps, the most important question, or the one which we have thought to be the most important, and to which we have given the most time and study.

"The defendant says that, as the plaintiff did not make the improvements nor invest any money in their construction, she is not entitled to this benefit; but he forgets that she accepted by means of a stipulation, that all the permanent improvements made on the property by the lessee would inure to the benefit of the lessor. If she, the lessor, in the end would take possession of the leased property, and if she never parted with the title to it until the sale was effected, then, while the property was leased, the plaintiff was at all times the owner of the improvements. Klein, in his work above cited, deals with this question, at page 320. He cites a ruling of the Board of the Bureau of Internal Revenue of the United States, to the effect that the owner of a leased property was not bound to report the improvements made on said property until he had taken possession of it upon maturity of the lease; and further on he says that two Federal Courts had an opportunity to decide this question. In both cases the courts reversed the decision of the Commissioner of Internal Revenue that attempted to assess the profits of the owner of the property, in regard to improvements, as of the date on which they took possession of said improvements, and he cites the cases of *Miller* v. *Gearin*, 258 Fed. 225, and *Cryan* v. *Wardell*, 263 Fed. 248. The first of these cases held:

" 'The lessor acquired nothing in 1916 save the possession of that which for many years had been her own. The possession so acquired was not income. It was not a gain, but was a loss. Assuming that the building was income derived from the use of the property, we think it clear that the time when it was "derived" was the time when the completed building was added to the real estate and enhanced its value. At that time it represented a prepayment to the lessor of a portion of the rental, distributable over a period of 23 years. The lease provided that the ownership of all buildings or improvements put upon the premises was to vest in the lessor immediately upon the construction of the same, subject to the provisions of the lease.' *Miller* v. *Gearin*, 258 Fed. 225, 226.

"And the second one confirms the doctrine set forth in the former case, thus:

" ' . . . The moment the building was erected, which the terms of the lease show was to become and remain an integral part of the land upon which it was constructed, the title thereto vested. as completely in the plaintiff as though constructed by the plaintiff herself.' *Cryan* v. *Wardell*, 263 Fed. 248, 249.

"So that, in accordance with the above decisions, the improvements are in the nature of rent, and title to them passes to the owner of the leased property as if they had been constructed by such owner. No great effort is necessary in order to decide the question in favor of the plaintiff."

The judgment appealed from must be affirmed.

Mr. Justice Wolf and Mr. Justice Córdova Dávila took no part in the decision of this case.